UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GABRIEL REED, JR.** | : | **DOCKET NO. CV 06-0680** |
| **VS.** | : | **JUDGE MINALDI** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that the Commissioner's decision is consistent with relevant legal standards and is supported by substantial evidence in the record. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

Gabriel Reed filed applications for Disability Insurance Benefits and Supplemental Security payments on May 2, 2003. (Tr. 12, 51-53, 200-201). He alleged disability as of September 30, 2000 due to bi-polar disorder and schizophrenia. (Tr. 51, 200). The claims were denied initially on October 1, 2003 (Tr. 202) and thereafter Reed timely requested and was granted a hearing before an Administrative Law Judge ("ALJ") scheduled initially for October 28, 2004 (Tr. 17-22). Reed was hospitalized at that time, so this hearing was postponed (Tr. 265-

268) and was rescheduled for September 14, 2005. (Tr. 37-41). Reed testified at the hearing (Tr. 210-211, 229-232). Also testifying were his grandmother, Doris Guidry (Tr. 214-222), his mother, Mary Guidry Reed (Tr. 222-229), and vocational expert Patricia Cowen (Tr. 233-263). In an October 4, 2005, written decision, the ALJ determined Reed retained the residual functional capacity ("RFC") for work at all levels of exertion of a simple, routine nature with little or no contact with the public, was not precluded from returning to his past relevant work as a laborer, and therefore was not disabled under the Act. (Tr. 16). Reed appealed the adverse decision to the Appeals Council and submitted new medical evidence for review (Tr. 6, 204-205). However, on February 15, 2006, the Appeals Council denied Reed's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5).

Reed now seeks review by this court of the denial of benefits. He alleges the following errors:

(1) the ALJ erred in determining the claimant's RFC;

(2) the ALJ erred in not utilizing the five-step sequential evaluation process;

(3) the ALJ posed and relied upon a defective hypothetical question;

(4) the ALJ did not follow the Commissioner's special technique for evaluation of mental impairments.

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **LAW AND ANALYSIS**

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to

establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See*, *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991). If the ALJ determines that the claimant can perform past relevant work, the claimant must prove otherwise. *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988).

**Issue 1:**     The ALJ Erred in Determining Plaintiff's RFC

The Court concludes that the ALJ's determination of the plaintiff's RFC is supported by substantial evidence in the record. The ALJ found that the plaintiff had "the residual functional capacity for work at all levels of exertion of a simple, routine nature with little or no contact with the public." (Tr. 15). In making this determination, the ALJ discussed the plaintiff's mental impairments, drug and alcohol abuse, and borderline intelligence. (Tr. 14). The ALJ concluded that the plaintiff had a "history of being non-compliant to treatment and medications," as indicated in exhibits covering treatments in 1998 and 2000, but that he was by turns doing better, was significantly improved, or was stable with medication, and that therefore, he was not disabled. *Id.*

The ALJ's determination of the plaintiff's RFC was consistent with the findings of Charles M. Robertson, Ph.D.'s consultative opinion of November 11, 2004 (Tr. 192-193) and in part with Dr. Jerry L. Whiteman's opinion of August 26, 2005 (Tr. 197-198), which was furnished to the ALJ at the hearing. (Tr. 209). Mr. Robertson is a clinical psychologist. Dr. Whiteman is a psychologist. Both doctors' Medical Source Statements of Ability to Do Work-Related Activities (Mental) noted the plaintiff had impairments in his ability to understand, remember, and carry out instructions. Although their opinions varied as to the severity of the

plaintiff's impairments, both psychologists considered the plaintiff's ability to make judgments in work-related decisions, or to carry out detailed instructions, markedly impaired. (Tr. 192, 197). Mr. Robertson rated the plaintiff as moderately impaired in his ability to respond appropriately to supervision, co-workers, and work pressures, and noted that he had "persistent delusional beliefs." (Tr. 193). Dr. Whiteman indicated that the plaintiff has "a history of hearing voices and seeing hallucinations." (Tr. 196). Both noted the plaintiff's drug use, Dr. Whiteman characterizing it as "a history of poly substance abuse" (Tr. 197), and Mr. Robertson noting that the plaintiff's "abuse of cocaine can trigger a psychotic episode." (Tr. 193). Both agreed that the plaintiff cannot manage benefits in his own interest. (Tr. 193, 198).

The record includes a third Medical Source Statement (Tr. 204-205) dated October 20, 2003, and furnished to OHA/SSA on February 19, 2004, prior to the hearing before the ALJ on September 14, 2005. The ALJ does not refer to this report in his determination of disability. The signature is illegible, and the doctor's name is not printed anywhere on the report or its accompanying fax cover, however the medical speciality is listed as MD-Psychiatry. The psychiatrist notes that he cannot determine the etiology of the plaintiff's limitations, and questions whether it is caused by his mental illness, whether it is substance abuse induced, or whether they are co-occurring conditions. (*Id.*) None of the reports suggest that the plaintiff is sufficiently impaired to preclude all work.

A medical condition that reasonably responds to therapy cannot be considered disabling. *Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987); *Lovelace v. Bowen*, 819 F.2d 55 (5th Cir. 1987). The ALJ refers extensively to the medical record and medical opinions in his determination, and after listing the plaintiff's mental

5

health problems and treatment history, he concludes that the plaintiff's "bizarre, threatening behavior, hallucinations and delusions . . . occurred when he was not on his medications . . . With medications, the claimant's condition was stable, significantly improved, or he was doing much better." (Tr. 14, citing Exhibits 1F/34, 1F/32, 1F/5, 2F/30). The ALJ notes further that the plaintiff was able to work through calendar year 2000 despite drug and alcohol abuse. (Tr. 15). The plaintiff argues that the exhibits cited by the ALJ and upon which evidence he bases his determination refer to dates in 1998, prior to the plaintiff's alleged onset date of disability, September 30, 2000 (Brief pp. 2-3), and that the ALJ overstated the plaintiff's ability to function while taking medications, relying on exhibits referring to dates prior to the alleged onset date of disability. *Id.* at 3-4. However there are later medical records showing a similar pattern of symptoms and treatments that were submitted to the ALJ with the documents from 1998 to 2000.

For example, the plaintiff was treated in Moss Regional Hospital emergency room on May 30, 2002 complaining of hearing voices. The diagnosis was noted as "schizophrenia?," the hospital's psychiatric consultant, Dr. Katta, was consulted, and he prescribed prolixin, lithium and cogentin. (Tr. 153, 156). Additional notes on this visit indicate that the plaintiff was cooperative, that he had residual anxiety and residual speech problems, and that aftercare would take place through the Lake Charles Mental Health Center in prison. (Tr. 156). The plaintiff was seen in the Moss Regional Hospital emergency room the following year, on May 30, 2003, complaining of lack of sleep, stating that his medications had been reduced, and that he was staring at himself in the mirror and at others. He had painted a cross of ashes on his face to ward off the devil, was agitated, and was reported as having faulty thinking. (Tr. 155). Yet a detailed report of his progress on that same date describes the plaintiff as quiet, cooperative, making no

delusional statements and denying hallucinations. The report concludes that the plaintiff "does not appear to be responding to internal stimuli." This report also indicates that the plaintiff's treating physician at the mental health unit had changed, and the new doctor had reduced his prolixin dosage. The plaintiff complained that he had been suffering from lack of sleep, loss of concentration, and decreased control over his thoughts and behavior. Prior to being seen in the ER, he had "realized his medication was too little," and he had taken two additional doses of prolixin on his own. The report concludes that at the time the report was written, the plaintiff was sleeping quietly in the ER, and that he was referred back to the mental health unit for review of his dosages. (Tr. 154). These events are consistent with the events in prior years, in which the plaintiff acted out when off his medications, and was cooperative and exhibited no odd behaviors once his medications were stabilized. We therefore find that the ALJ's conclusions as to the plaintiff's successful medical treatment is supported by substantial evidence in the record.

The ALJ therefore determined that the plaintiff had the RFC for work at all levels of exertion of a simple, routine nature with little or no contact with the public, and noted that this RFC was consistent with the evidence and with the Medical Source Statement provided by Mr. Robertson. (*Id.*)

**Issue 2:**     The ALJ Did Not Utilize the Five-Step Sequential Evaluation Process

The Court concludes that the ALJ did use the five-step sequential evaluation process in determining that the plaintiff was not disabled. He made all appropriate findings in the sequential process order: He found at Step One that the plaintiff had not been gainfully employed for more than a year, at Step Two that the plaintiff's bi-polar disorder and schizophrenia were severe impairments, at Step Three that the impairments nevertheless did not

meet or equal the requirements of any enumerated disability,[1] at Step Four that he retained the RFC for his past relevant work, and at Step Five that he could return to work as a construction laborer or busboy/fast food worker. (Tr. 15-16). The Step Four determination was made in conjunction with the testimony of Vocational Expert Patricia Cowen[2] ("VE") who evaluated the plaintiff's past work history. The VE's testimony ran for thirty (30) pages, with examination and cross examination by the plaintiff's representative. (Tr. 233-263). The VE concluded that with an RFC for a person limited to a simple, routine work environment, having little or no contact with the public, the plaintiff would be able to return to his past relevant work as a laborer. For this reason, it was not necessary for the ALJ to consider at Step Five whether the plaintiff could perform other work based on his RFC.

**Issue 3:**     <u>The ALJ posed and relied upon a defective hypothetical question</u>

The plaintiff argues that the hypothetical upon which the VE opined was defective, as it did not take into account the severity of his impairments. The plaintiff bases his argument on the ALJ's failure to refer to the report of a psychiatrist. (Plaintiff's Brief, ¶ III). This report is presented with no context or provenance which would allow the ALJ to determine how much weight to accord the psychiatrist's opinion. Nothing in the record indicates whether this physician has regularly treated the plaintiff or simply examined him one time to assess his mental abilities. Absent any indication that the psychiatrist is a treating physician, whose opinion must

---

[1] Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4.

[2] The VE is incorrectly named as Beverly Prestonback in the plaintiff's brief. [doc. # 9].

be accorded great weight,[3] the ALJ is entitled to determine the credibility of medical experts and to weight their conflicting opinions and testimony. *Snell v. Chater*, No. 95-20080 (5th Cir. 1995) (unpubl.); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). Here, however, the psychiatrist's Medical Source Statement is in agreement with Mr. Robertson's in reflecting that the plaintiff had only a slight impairment in understanding, remembering and carrying out short, simple instructions, and only moderate impairment in understanding and remembering detailed instructions. (Tr. 192, 204).

**Issue 4:**   The ALJ did not follow the Commissioner's special technique for evaluation of mental impairments.

Plaintiff argues that his mental impairments of schizophrenia, bipolar disorder, low I.Q., and paranoia require the ALJ to separately analyze his ability to function in job-related areas. As the ALJ bases his RFC on the Medical Source Statement of Charles Robertson, which clearly analyzes the plaintiff's ability to function in job-related tasks and situations, we do not find any error here.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the plaintiff was not disabled under the Social Security Act is supported by substantial evidence and is free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter dismissed.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days

---

[3] *See, e.g.*, 20 C.F.R. § 404.1527(d)(2), *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981) (quoting *Fruge v. Harris*, 631 F.2d 1244 (5th Cir. 1980) ("Unless there is good cause shown to the contrary, the testimony of the treating physician must be according substantial weight.")

from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 20th day of June, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE